## No. 14,641.

### COWLES *v*. THE PEOPLE.
(110 P. [2d] 249)

Decided December 23, 1940.    Rehearing denied February 10, 1941.

Mr. GEORGE O. BAKKE, Mr. E. V. HOLLAND, Mr. THEO-DORE A. CHISHOLM, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. McAULIFFE, Assistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was charged in a two-count information with murder by abortion. On the first, charging commission by an instrument, the verdict was guilty; on the second, charging commission by noxious drugs, not guilty. He was sentenced to from ten to twelve years in the state penitentiary. To review that judgment he prosecutes this writ. The twenty-three assignments are thus grouped and presented in the briefs and will be so considered, altering only the order: Error in 1. The admission of certain evidence relating to Exhibit B. 2. The admission of Exhibit B. 3. Permitting a witness to exonerate himself. 4. Excusing a witness for testifying on the ground of self incrimination. 5. Permitting witnesses for the people to impeach themselves and each other. 6. The giving of instruction No. 8, and, 7. The entry of a judgment unsupported by evidence. A brief statement of facts is essential to an understanding of each of these and our conclusions thereon.

Shirley Sullivan, twenty years old, died May 7, 1938, as the result of an abortion. She had been found pregnant by Dr. Osborn March 9, preceding. Twenty days later she called on defendant for aid and he performed the abortion. April 5, Dr. Harris was called in and the patient taken to a hospital. The following day Dr. Harris concluded there had been a miscarriage, probably resulting from an abortion, and that infection had set in.

Death resulted a month later. Information was filed the next day and the trial was held December 1 to 3 thereafter.

■ 1. April 7 certain persons went to the hospital and questioned Miss Sullivan. Her story was written, read to and signed by her. This statement, Exhibit B, was introduced in evidence and certain of the witnesses present when it was taken testified concerning it. Its admissibility, hereinafter considered, is now assumed. The testimony of said witnesses is attacked but we find no basis therefor. That testimony is in some respects confusing and in others not entirely clear. There are minor discrepancies. Some of these witnesses referred to occurrences at the taking of Exhibit B, and occurrences at a later visit. These are sometimes not carefully differentiated but we find no occasion to discard any of this evidence. It is not essential that all witnesses testifying on the same side concur in the details of a given transaction. With the purest motives and equal opportunity to see and hear they are often in conflict. Rejection, acceptance, and reconciliation are for the jury.

■ 2. It is contended that Exhibit B was inadmissible. This rests principally on the assumption that it was offered as a dying declaration. That assumption is unsupported. It was offered primarily as evidence of admissions made by defendant and in corroboration of witnesses who testified thereto. There is ample evidence that the exhibit was written by someone at the hospital, from statements made by Miss Sullivan, in part in answer to questions propounded, that it was read to her, and by her approved as correct and signed. It need not be copied here for much of it does not now concern us. Suffice it to say that it recites that the patient was pronounced pregnant by Dr. Osborn and went to defendant for relief; and that the latter performed an abortion on her, giving the date and details. The date given is March 30, and the important thing is that after defendant's arrest he was questioned by officers, Exhibit B

presented to and read by him, that he admitted its entire truthfulness save as to the date which he said should be March 29. The exhibit was clearly admissible. 16 C.J., p. 634, §§1262, 1263; *Moeller v. People,* 70 Colo. 223, 119 Pac. 414.

3. Miss Sullivan's employer interested himself in her welfare and the trial judge seems to have been alarmed lest that humanitarian conduct might raise the suspicion that her condition was chargeable to her benefactor. By direction of the court, over objection of the people and the defense, the employer was interrogated and permitted to state the he was not responsible, that he had neither employed a doctor, nor paid, nor promised to pay one. Of course this was improper. There was no such issue in the case. Having interjected it the court might have been greatly embarrassed had either side insisted upon its right to meet and refute such evidence. Having disposed of that question others might come forward demanding similar rights and proffering similar exoneration, until the entire trial bogged down in a morass of collateral and immaterial issues. Fortunately such a catastrophe did not eventuate. Hence the gratuitous exoneration was error without prejudice.

4. Gertrude Pearson was called as a witness for defendant. Having stated that she was a practical nurse, that defendant was her family doctor, and that she knew deceased and met her about noon on March 30, counsel claimed the right to examine her as to the ensuing conversation. On objection interposed further interrogation proceeded with the jury absent. Apparently the trial judge had been advised that certain questions might call for answers implicating the witness in a conspiracy to commit an abortion, or as an accessory thereto. On the suggestion of the district attorney, and without objection from the defense, the court advised her of her constitutional right to refuse self-incrimination. On the suggestion of counsel for the defense, and without objection from the people, he further advised her on

the law of accessories. He also accorded her the right to consult counsel and offered to appoint such. Counsel for defendant then tendered his services in that capacity and a recess was taken to facilitate such consultation. On resumption of the trial Mrs. Pearson stood on her constitutional right and refused to further testify. This proceeding was not questioned in the original motion for a new trial but was first called to the attention of the court by supplemental motion more than five months after its occurrence. A number of authorities are cited to the effect that it does not accord with the generally approved practice. That is doubtless correct. But the circumstances differed widely with those ordinarily met with. The general rule is that one cannot take advantage of an error which he has been instrumental in foisting upon a court. Here counsel for defense, from which the objection now comes, himself suggested the caution which should be given the witness and volunteered his services in her behalf. When upon resumption of the trial she "refused to testify" it is proper to assume that this was the result of the conference just held and probably in compliance with the advice she had received. Be that as it may the defense participated in, and put the stamp of its approval upon, the entire procedure. Relying upon certain language in the opinion in *McRae v. People,* 101 Colo. 155, 71 P. (2d) 1042, counsel urge that in case of "a seriously prejudicial error" and because "justice requires," we should "of our own motion examine and determine the point." Assuming the general proposition it does not appear that the error, if any, was serious or prejudicial, or that justice requires our intervention. Certainly this court under the circumstances will not be diligent to search out some possible technical error upon which a reversal can be predicated.

■ ■ 5. Exhibit C, dated March 29, 1938, written on the letterhead of defendant, was introduced by the people. It reads:

"This is to certify that we have examined one Shirley Sullivan of Denver and find a condition of Endocarditis and metral regurgitation sufficent that we believe that it would be impossible for her to go through the entire period of pregnancy successfully. She also has diseased and infected tonsils, which are undoubtedly the cause of the heart condition.

H. L. Burdick D. C.

La Vern Shaffer D. C.

City and County of Denver

Subscribed and sworn to before me this 29th day of March, 1938.

Notary Public

Irene Caffee.

My commission expires Nov. 18, 1941."

Burdick and Shaffer, like defendant, were chiropractors. They and the notary Caffee testified for the people. Therefrom we learn that they never saw deceased, knew nothing of her condition, and signed the exhibit long after its date at the request of defendant and presumably to help him out. It further appears that defendant was the family doctor of the notary Caffee, that the exhibit was not "subscribed and sworn to" before her, nor sworn to at all. It was brought to her home by defendant with the signatures on it and there "notaried" at his request on April 29th, one month after its date and after the date of the certificate. Counsel for defendant attacks the testimony of these witnesses as self impeachment, interdicted by the general rule, 70 C.J., p. 793, §991 (4). But the rule does not prevent a party from showing that his witness has made false statements at some other time and place. It simply prohibits a party from attacking one for whom he has vouched to the court by repudiating the very evidence he has thus produced. Here is no attempt to attack or repudiate any statement which the people had been instrumental in producing. This defendant had been manufacturing evi-

dence and using these witnesses as his tools, and no rule of law known to us forbade them to admit it. The evidence itself was clearly admissible as showing consciousness of guilt. 16 C.J., p. 555, §1075; *Mora v. People,* 19 Colo. 255, 35 Pac. 179.

6. Instruction No. 8 is attacked because it omits the exception which justifies an abortion, i. e., "unless it appear that such miscarriage was procured or attempted by or under advice of a physician or surgeon with intent to save the life of such woman or to prevent serious and permanent bodily injury to her." But the exception, in those exact words, was contained in instructions No. 5 and 7, and by instruction 22 the jurors were told that all "must be taken, read and considered together." Moreover, no objection was made to this instruction hence the defense may not now rely upon any latent error concealed therein. Rule 7 of the rules of this court; *Koontz v. People,* 82 Colo. 589, 263 Pac. 19. The error asserted is of the very class which justifies the rule. There is no probability that it was prejudicial and the slightest timely hint would have cured it. Such are not the errors of which appellate courts, of their own motion, take cognizance solely to forestall a miscarriage of justice.

7. Counsel ground their assignment of no evidence on the inadmissibility of Exhibit B and the lack of evidence of the use of an instrument. We have disposed of Exhibit B, supra. Assuming the correctness of counsel's position as to the meaning of "instrument" and the evidence essential to support a finding of the use thereof, this record, exclusive of Exhibit B, is probably sufficient. But with that exhibit added all doubt upon the point is put at rest.

In addition to the foregoing it should be observed that a few hours before death Miss Sullivan made certain statements, evidence of which was admitted on the theory of "dying declaration." While not included in the classification of assignments above referred to this

evidence is attacked in the briefs. The objection seems to rest upon the lack of proof that the patient *expressed* a consciousness of impending death and the abandonment of all hope of recovery. The people answer this, citing, inter alia: *Zipperian v. People,* 33 Colo. 134, 79 Pac. 1018; *Brennan v. People,* 37 Colo. 256, 86 Pac. 79; *Weaver v. People,* 47 Colo. 617, 108 Pac. 331. Whether this met the strict requirements of a dying declaration we need not determine. For the purposes of this case we assume it did not. Its admission as such, if error, was harmless. The statements then made by Miss Sullivan, as alleged, were but repetitions of some of the statements made in Exhibit B which stands as the uncontroverted admissions of defendant.

It remains only to add, for a better understanding of the foregoing, that when the people rested there was a strong case against defendant: A woman admittedly dead from an abortion performed by him; Exhibit B reciting the cold facts and pointing him out as the actor, reinforced by the oral dying declaration of the victim; and not only no hint of necessity to save life or prevent serious and permanent bodily injury, but Exhibit C, with the testimony of the witnesses explaining it, telling its damning story of a bold attempt to manufacture evidence of such necessity, and recklessly involving two friends and fellow practitioners of defendant and one of his patients in that perversion. Certainly the case called for every scrap of evidence available to defendant to meet that of the state and explain, if possible, its overwhelming implications. Notwithstanding all this defendant did not take the stand and called but two witnesses; one who, with the active and voluntary assistance of his counsel departed, without testifying, under the cloak of her constitutional protection; and the other that former employer whose only function seemed to be to receive his immunity bath.

Finding no reversible error in the record the judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE YOUNG and MR. JUSTICE BAKKE not participating.