No. 23988

**Felix Belramino Roybal v. The People of the State of Colorado**
(493 P.2d 9)

Decided January 24, 1972.          Rehearing denied February 14, 1972.

146

Benton S. Clark, Jr., for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Eugene C. Cavaliere, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Felix Belramino Roybal was convicted in the district court of El Paso County of first degree murder and sentenced to life imprisonment. We affirm the conviction.

The record shows that at approximately 1:15 p.m. on Saturday, May 11, 1968, the body of Juan Antonio Archuleta was found near a construction shack in a field off the Airport Road in Colorado Springs. The deceased died from multiple gunshot wounds to the head, which were fired at short range from a .22 caliber firearm. The righthand

pocket of the deceased's trousers had been pulled out and the right rear pocket was partially pulled out. No identification was on the body.

At approximately 6:45 p.m. on the same day, defendant Roybal was involved in a one-car accident north of Colorado Springs near the south entrance to the Air Force Academy. Eyewitnesses testified that Roybal was driving a white Ford sedan in an erratic manner, traveling north on Interstate 25, when he suddenly lost control of the car, swerved off the highway, skidded through the barrow pit into a small ravine, rolled over once, and then came to rest near a small pond. The Ford was registered in the name of the victim's wife, Emma Ida Archuleta.

Roybal, who was the sole occupant of the car, was catapulted out of the vehicle and was found sprawled on the ground in a semiconscious condition. Near him on the ground lay Archuleta's billfold. In the car were found seventeen .22 caliber live bullets and one spent shell. Approximately sixty-one feet off the highway along the trail of skid marks made by the car, a .22 caliber Rohm pistol was found in the glass wreckage from the rear window of the car. This gun contained five live cartridges and one spent shell.

An expert witness testified that a bullet fragment taken from the head of the victim was of the same make as the bullets found in the car. However, he was unable to state positively that the bullet was in fact fired from the Rohm pistol because of insufficient markings on the slug found in Archuleta. The evidence showed that Roybal had purchased this gun from a sporting goods store in Colorado Springs on April 28, 1968.

Numerous bloodstains were found in the car, and bloodstains were found on Roybal's jacket and handkerchief. The stains were shown to be Type O blood which was the classification of Archuleta's blood. Even though Roybal was injured in the accident, he suffered no external cuts or wounds.

The record showed that Roybal had commenced drinking intoxicating liquors Friday evening, May 10. He resumed

drinking early Saturday morning and was seen drinking with Archuleta in a tavern between 10:00 and 11:00 a.m. that morning. Archuleta was last seen shortly after 11:00 a.m. that morning, driving away in his wife's white Ford.

The Ford was next seen in the possession of Roybal at about 12:30 p.m. when he drove to a lady friend's apartment where he visited with two women. He was described as being quite drunk and staggering. He carried a gun in his waist and during his conversation he commented to one of the women present: "Now, what would you say if I shot a man." He then explained that he was "just kidding." He and the two women spent the afternoon on a trip to Pueblo and back. Roybal was too drunk to drive and slept during most of the trip. On their return to Colorado Springs they separated company. Roybal then drove north out of the city where he became involved in the accident hereinabove described.

Roybal pleaded not guilty and not guilty by reason of insanity. The latter plea was withdrawn and trial proceeded on the guilt issue only. The People's case was presented upon the theory of a homicide perpetrated during the commission of a felony, namely, robbery.

Defendant testified in his own behalf, denying that he shot Archuleta. He described his chronic problem with alcohol. He related early events concerning his drinking spree, commencing the evening of May 10 and continuing through the morning of May 11. However, he disclaimed any memory of the events occurring after mid-morning and remembers only that he awoke in an ambulance on the way to Penrose Hospital that evening. Expert psychiatric testimony concerning alcohol-induced amnesia was presented on his behalf in explanation of his purported lack of memory concerning the critical events of May 11.

In seeking reversal, Roybal submits the following assignments of error:

I.

■■■ Defendant claims the trial court erred in denying his motion for acquittal made at the conclusion of the People's case and renewed at the conclusion of the entire evidence,

asserting that the evidence was insufficient to warrant a conviction of first degree murder. We disagree. The record contains substantial competent evidence from which the jury could legitimately infer that the defendant killed Archuleta while robbing him. Indeed, all of the circumstances reasonably pointed to his guilt. In such a state of the record, the People's case is "impregnable" against a motion for acquittal. *Ruark v. People,* 164 Colo. 257, 434 P.2d 124.

█ Although he took the stand, defendant offered no evidence which reasonably explained the many incriminating facts and circumstances in which he found himself enmeshed. The substance of his evidence was that he was too drunk to form the intent to commit the criminal act charged; that because of his intoxication he did not remember any events during the critical hours of May 11; and that he simply did not kill Archuleta. The court properly denied Roybal's motion for acquittal at the conclusion of all of the evidence, as the question of credibility of the witnesses and the ultimate guilt of defendant were matters for the jury's determination. *Jordan v. People,* 151 Colo. 133, 378 P.2d 699; *Abeyta v. People,* 134 Colo. 441, 305 P.2d 1063; *People v. Urso,* 129 Colo. 292, 269 P.2d 709.

## II.

Roybal presents five assignments of error relating to pretrial discovery motions. At the time of these proceedings, the trial court's determinations in this area were governed by Colo. R. Crim. P. 16, adopted by this Court in 1961.

By various motions, defendant sought:

1. To inspect, copy and photograph all items of personal property held as evidence, belonging to the deceased, and to inspect or copy all photographs taken in the investigation of the case, including the body of the victim and the place where the body was found and the accident scene;

2. To require the prosecution to produce all statements of potential witnesses;

3. To require the prosecution to permit defense counsel to inspect the entire file of the district attorney and to produce

copies of the "rap sheets" held by the police department, and reports of the FBI;

4. To require production of a copy of the FBI laboratory report of Agent Charles L. Killion; and

5. To produce a list of all persons taken into custody for investigation of the homicide, together with the names of the questioning officers and the times and dates of questioning.

The court denied the motions as to such matters.

In *People ex rel. Shinn v. District Court,* 172 Colo. 23, 469 P.2d 732, this Court noted that there was no inherent judicial discretion to permit unlimited discovery; that the right to discovery was unknown under the common law; and that discovery was a stranger to criminal procedure in Colorado. Absent constitutional rights, unless our rules of criminal procedure permit discovery in a certain area, error cannot be predicated upon the court's denial thereof.

We have reviewed each of the items sought to be discovered here and find that the trial court did not abuse its discretion in denying Roybal's motions in view of the discovery rule than in effect. That some or all of the matters might now be discoverable under subsequent amendments to Rule 16 (Crim. P. 16) does not invalidate the trial court's rulings which were necessarily circumscribed by the rule then in effect. It is the court's duty to conduct the litigation in accordance with applicable rules of procedure in effect at the time of the trial. We find no merit in these assignments.

### III.

Defendant contends that the trial court committed error in permitting the coroner, who was a medical doctor and an expert in the field of pathology, to testify concerning tests made of blood taken from the victim and of bloodstains found in the automobile and on defendant's clothing. No objection was made to this evidence at the trial, but error was first asserted in the motion for new trial. Defendant asserts that admission of this evidence somehow violated his constitutional rights. We find no error in the admission of this evidence. It is generally held that the results of blood-grouping tests are admissible in evidence on the

question of whether the particular blood or bloodstains were made by the blood of a particular individual. *See* cases collated in 163 A.L.R. 950; 46 A.L.R.2d 1025; *C. McCormick, Law of Evidence* § 177; 29 Am. Jur. 2d *Evidence* § 370.

Further, Roybal complains that his constitutional rights were violated when blood was withdrawn from his person without his consent while he was confined in the hospital as a result of the accident. It was stipulated that the attending physician withdrew the blood without Roybal's consent for medical reasons in connection with efforts to make a diagnosis of his injuries. The evidence concerning the taking of Roybal's blood, the testing to determine its alcoholic content, and that it contained .204 percent alcohol, was not introduced into the trial by the prosecution, but rather by the defendant as part of his defense, presumably to show the extent of Roybal's intoxication. The defendant cannot predicate reversible error on the admission of evidence he offers as a part of his defense. *Stilley & Scheer v. People,* 160 Colo. 329, 417 P.2d 494; *Cowles v. People,* 107 Colo. 161, 110 P.2d 249; *Efsiever v. People,* 105 Colo. 88, 96 P.2d 8. This evidence apparently was introduced as a part of the defense strategy. A defendant will not be heard to complain when the anticipated benefits of his defense strategy fail to materialize. We find no merit to these assignments.

## IV.

Error is predicated upon the giving and refusal to give certain instructions.

A. Although defendant did not object to instruction No. 9, he here contends the giving of this instruction, although a proper statement of the law, was improper under the evidence in the case. Instruction No. 9 set forth the elements necessary to be proved in first degree murder and felony murder — that is, murder committed during the perpetration of or attempt to perpetrate a robbery. The record shows defendant did object to instruction No. 6 which defined felony murder, and to instruction No. 7 which defined

robbery. Under these circumstances, we consider his objection to instruction No. 9.

In view of all the facts and circumstances in evidence heretofore enumerated, we find no error in instructing the jury on felony murder. The evidence suggesting a robbery of the victim — the pulled out pockets of the deceased's trousers, the absence of a wallet and identification, the wrecking of the automobile which had previously been in the victim's possession, the finding of the victim's wallet on the ground near the semiconscious person of the defendant at the accident scene — all unexplained by defendant, in our view is sufficient to reasonably support an inference that the victim had been robbed during the transaction in which he was killed.

B. Defendant also claims it was error to deny the giving of his tendered instructions numbered 1, 2 and 3.

Tendered instruction No. 1 purported to define a confession and a statement; No. 2 related to credibility; and No. 3 concerned voluntariness of a statement. The evidence discloses no confessions by the defendant. The only statement was the spontaneous remark attributed to defendant in the afternoon of May 11 by a woman companion: "What would you say if I shot a man." This remark was in a private conversation. No objection was made to this testimony and no issue was raised as to voluntariness of the statement. The court properly instructed the jury on credibility of witnesses generally. Under these circumstances, we find no error in refusing tendered instructions 1, 2 and 3.

C. Defendant's tendered instruction No. 4 was refused by the court. It was based upon the statutory presumptions of intoxication set forth in C.R.S. 1963, 13-5-30, concerning the operation of motor vehicles while under the influence of intoxicating liquor. The court properly ruled this instruction was not applicable to the issue of first degree murder. The court instructed the jury that drunkenness was no excuse for commission of a crime and could be considered only as bearing upon the ability of a

defendant to form the intent necessary to commit the crime charged.

D. Defendant's tendered instructions Nos. 7 and 8, which were also refused, were alternative instructions setting forth defendant's theory of defense.

While generally it is true defendant is entitled to an instruction on his theory of the case, here, defense counsel, while discussing an instruction prepared by the court on what at that time appeared to be defendant's theory of defense, stated:

"The Defendant objects to the inclusion of the Court's Instruction 12-A, on the grounds that Instruction number 12-A of the Court does not espouse the Defendant's theory of the case. Counsel for Defendant is aware of Defendant's right to include an Instruction which embodies his theory of the case. However, any possible theory of the case, in words other than not guilty, would be inappropriate. It is felt by counsel for the Defendant, after a thorough discussion of the matter with the Defendant, that further Instructions with respect to the Defendant's theory of the case would be repetitious. The Defendant's theory of the case is included in the plea of not guilty."

In view of this statement by defense counsel to the court, we find no reversible error in this instance.

V.

The last asserted error concerns the court's denial of defendant's post-trial Motion to Inspect, Test and Compare: (1) the Rohm .22 caliber pistol; (2) all projectiles and fragments taken from the body of the victim or found near the body; (3) all unspent ammunition and expended cartridges found in the Ford auto, or near the scene of the accident; (4) the written report or any written opinions of the FBI Agent, Charles L. Killion; and (5) the test projectiles and expended cartridges resulting from tests performed by the FBI agent in connection with the case. It is argued that it was improper for the trial court to deny access to the very evidence which would support a motion for a new trial based upon newly discovered evidence.

The avowed purposes of the motion were to assist defendant in preparing his appeal and to aid him in discovering any evidence for use in presenting his defense in a new trial, if one were granted. This motion was purportedly made pursuant to Colo. R. Crim. P. 16(a) and (b). We note the rule relied upon relates only to pretrial discovery and not to post-trial discovery.

Defendant's new trial motion did not allege the discovery of any new evidence as grounds for a new trial. As we understand counsel's argument, the denial of the motion to inspect prevented defendant from discovering new evidence which then might be used as a basis for a new trial, or if such were denied, then used to impeach the verdict of the jury in this case. He cites in support of his position, *Cheatwood v. People,* 164 Colo. 334, 435 P.2d 402. That case involved denial of a new trial motion based upon newly discovered evidence where the motion and supporting affidavit showed that on retrial a different result might be reached; and, further, where it was alleged that evidence favorable to the defendant, known to the prosecution was withheld by the prosecution.

In the present case, the motion for new trial made no such allegation. The motion to inspect was designed for post-trial discovery of matters which counsel hoped would then place defendant within the ambit of *Cheatwood.*

Newly discovered evidence that would merely tend to discredit or impeach the expert testimony of the state's ballistic expert would not be grounds for a new trial. *Miller v. People,* 92 Colo. 481, 22 P.2d 626; *Paxton v. People,* 79 Colo. 361, 246 P. 276; *Eachus v. People,* 77 Colo. 445, 236 P. 1009; *Wion v. United States,* 337 F.2d 230 (10th Cir.). No clue as to what additional evidence might be discovered which would tend to change the result of a new trial is given in the motion and no allegation is made as to the nature of new evidence favorable to the defendant which was purposely withheld by the district attorney. We do not perceive how denial of defendant's motion to inspect, test and compare affects the validity of the jury's verdict, which

was rendered upon ample competent evidence received in substantial compliance with procedural due process. Of course, defendant is not precluded in the future from filing a motion for new trial, based upon newly discovered evidence.

The judgment is affirmed.