The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Arthur L. **URRUTIA**, Defendant– Appellant.

No. 92CA0966.

Colorado Court of Appeals, Div. IV.

Sept. 22, 1994.

Rehearing Denied Nov. 3, 1994.

Certiorari Denied May 8, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErckenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Amy W. Naes, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Lindy Frolich, Ellen K. Eggleston, Deputy State Public Defenders, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Arthur L. Urrutia, appeals from the judgments of conviction entered upon jury verdicts finding him guilty of second degree murder, first degree sexual assault, and second degree kidnapping. We affirm.

In the evening of November 15, 1989, defendant's estranged wife left the supermarket where she was employed after telling co-workers she was going to attend a pool tournament. At approximately 11:00 p.m., defendant drove to the apartment building where

his brother lived and honked the horn until his brother came outside. Defendant was bleeding; his wife was lying on the back seat of the car wearing only a jacket. Defendant's brother called the police and both defendant and his wife were taken to the hospital where she was pronounced dead.

At the hospital, while waiting to go into surgery, defendant told police that he had picked up his wife from her job and that they had driven to a secluded spot where he told her that he would agree to a divorce. He stated that they then "made love," but then began to argue. He told police that she picked up a knife that he had purchased earlier that evening and began to stab him and that she received her fatal injuries in the course of an ensuing struggle for control of the knife. He related that, when he saw that she was fatally wounded, he became despondent and stabbed himself several times.

Defendant was tried on one count of first degree murder after deliberation, one count of felony murder, one count of first degree sexual assault, one count of first degree sexual assault with use of a deadly weapon, and one count of second degree kidnapping involving sexual assault. Defendant's first trial ended in a mistrial after the court concluded that the jury was deadlocked. After a second trial, defendant was found guilty of second degree murder, first degree sexual assault with use of a deadly weapon, and second degree kidnapping involving sexual assault.

## I.

Defendant first argues that the trial court erred by engaging in an *ex parte* colloquy with the jury concerning the likelihood of reaching a unanimous verdict and by shortly thereafter declaring a mistrial without first making additional inquiry or giving appropriate instruction. He further contends that, because the mistrial was improperly declared over his objection, the subsequent re-trial on the same charges constitutes a denial of his constitutional protection against double jeopardy. We disagree. Although the trial court's *ex parte* discussion with the jury in the first trial was error, we conclude that the

mistrial was not improperly declared and dismissal of these convictions is not required.

## A.

On November 1, after the jury had deliberated for more than three days and just prior to dismissing them for the weekend, the trial court inquired of the jurors as to the state of their progress towards a unanimous verdict. Counsel was absent pursuant to an agreement that the jury could be dismissed for the weekend outside counsel's presence.

THE COURT: Members of the jury, I have been informed that you have not reached a verdict, and I am ready at this time to recess for the weekend and ask that you come back at 8:30 on Monday. Let me just ask you, [jury foreperson], is there a lik[e]lihood of progress toward reaching a unanimous verdict in this case?

[JURY FOREPERSON]: My own personal opinion, no, Sir.

THE COURT: Do you all share that opinion?

[JUROR 1]: We are working.

THE COURT: Don't get me wrong. I know you have been working, but what I want to find out is, you know, what the lik[e]lihood of you reaching a unanimous verdict is because, you know, I am not going to keep you here until Thanksgiving. I want you to resolve this if you can do that, but I have not inquired about the status of your deliberations and it's really not my place except to determine if further deliberations will be productive.

[JUROR 1]: Could I make a suggestion?

THE COURT: Yes.

[JUROR 1]: Could you ask us individually if that is possible?

THE COURT: Well, no, I don't think I will be doing that.

[JURY FOREPERSON]: We started a process this morning where we were trying to reach agreement on several parts of it. We have not gone all the way through that process.

THE COURT: Don't tell me about your process. The main thing that I want to find out is if I continue to have you deliberate, will you be productive? You have

indicated no. Other people have indicated yes, and so, you know, with the idea that there is still—you're still working on it with the idea that you can reach some unanimous verdicts in your conclusion in this case, I would like to have you come back on Monday, and I can make further inquiry at that time to see whether you are.

[JUROR 2]: I think if we can finish the process that we started today which wouldn't go past Monday, we will know whether we will be able to do it.

THE COURT: That is fair enough. You have worked very hard on this case. You have been at it and worked very hard and it's a difficult process. It's a difficult thing that you people are doing, and we ask an awful lot of you in doing that, but you know, it sounds like to me at least you're working on it and working on it hard, and I know that's what you are doing. But when it reaches the point where you are not going to get it done, I need to know because I can't keep you in there forever nor do I intend to do that.

The jury was then dismissed for the weekend. The jury returned and began deliberations at 8:30 a.m. Monday, November 4. Approximately one hour later, the trial court received a written communication from the jury which read:

Nov. 4, 1991

Dear Judge Robb;

The jury is unable to reach a unanimous decision on any of the Counts 1, 2, 3, 4, 5, or 6.

Sincerely,

[Jury foreperson]
9:27 a.m.

Defense counsel requested that the court make further inquiry and instruct the jury to continue deliberating. The prosecution indicated that it did not believe further instruction was necessary but that it would not be improper. The court declined either to make further inquiry into the status of the deliberations or to give the jury any supplemental instructions, called the jury into court, declared a mistrial, and dismissed the jury.

Defendant's claim of error regarding the *ex parte* colloquy is twofold. He contends that the colloquy represents an improper deprivation of his right to counsel at a critical stage in the proceeding. He also contends that the trial court gave the jury coercive instructions during that colloquy which caused the jury to declare a deadlock prematurely. We agree that the court erred in speaking with the jury outside the presence of counsel about the status of deliberations. However, we conclude such error was harmless and that the court's statements did not induce the jury to become deadlocked.

## 1.

A defendant in a criminal case has a fundamental right to have counsel present when the court instructs the jury or responds to jury questions or at other critical stages of the trial. *See Leonardo v. People*, 728 P.2d 1252 (Colo.1986); *People v. Roybal*, 618 P.2d 1121 (Colo.1980). Here, however, counsel agreed that the court could conduct the simple administrative act of dismissing the jury for the weekend without counsel present. Nevertheless, defendant contends that this agreement did not contemplate questioning the jury as to the status of their deliberations and that such questioning constitutes error. We agree.

Once the conversation took a turn towards the issue of progress towards a unanimous verdict, the simple administrative act of dismissing the jury was transformed into a critical stage of the proceedings requiring the presence of counsel. The trial court not only received information as to the status of the deliberations which counsel would have likely considered of great interest, but also, in essence, instructed the jury to return on the following Monday and inform the court when it had reached a point at which continued efforts would not be fruitful. *See Key v. People*, 865 P.2d 822 (Colo.1994); *Leonardo v. People, supra*, 728 P.2d at 1257 ("Implicit within this right [to counsel] is the right of defense counsel to argue to the court concerning possible responses to the jury's inquiries and make objections, if desired, to those responses.").

### 2.

Accordingly, we must examine the *ex parte* discussion to determine the impact, if any, that such discussion had on defendant's right to a fair trial. *See Key v. People, supra.*

Defendant contends that, but for the *ex parte* conversation, there was a likelihood that the jury would have proceeded to agreement on an acquittal instead of declaring a deadlock and that, therefore, the error cannot be considered harmless beyond a reasonable doubt. We do not agree. In our view, nothing in the above-quoted colloquy can reasonably be construed as coercive.

■ Upon receiving information that a jury cannot agree on a unanimous verdict, a trial court may not expressly or impliedly authorize the jury to render a verdict wherein some members sacrifice their sincere opinions merely for the sake of reaching an agreement. *Lowe v. People,* 175 Colo. 491, 488 P.2d 559 (1971). *See Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957, 958 (1965) (Telling the jurors that they "have got to reach a decision in this case" is coercive.); *Lowe v. People, supra,* 175 Colo. at 496, 488 P.2d at 561 (The total effect of remarks to the jury which indicated that judge condoned "acceptance of verdicts based on untrue beliefs of part of the jurors" was coercive.).

■ Also, delivering a "time-fuse" instruction which gives the jury a short period in which to deliberate before declaring a mistrial may be reversible error. *See Allen v. People,* 660 P.2d 896 (Colo.1983) (instruction indicating that jury had only another fifteen minutes to deliberate before a mistrial declared was coercive). Discussing scheduling problems with the jury may also be coercive if those scheduling problems create an impression that the jury is under a short time limit to reach a verdict. *See Key v. People, supra.* Nonetheless, there is no *per se* rule banning all time deadlines for returning a verdict; instead, the circumstances of each case are to be examined. *See Allen v. People, supra.*

■ Here, the trial court told the jurors that it would like to see a resolution of the case and also that it would not keep them in deliberations "forever," or, more specifically, "until Thanksgiving." The court asked that they return on Monday, acknowledged that they were working hard on the case, and then asked to be informed if an impasse had been reached.

We do not perceive that the court said anything suggestive of coercion. It did not indicate that the jurors were under any time limit to reach a consensus or declare a deadlock except to remark that they would not be kept forever, which we regard as mere hyperbole, or more precisely, until Thanksgiving, which was approximately three weeks in the future.

Even if the court's statements are considered as admonishing the jury that it had to reach a verdict in the next three weeks under penalty of mistrial, in our view, that is not the type of short time deadline that would represent an unconstitutional restriction on the jury's deliberative function. *See People v. Fell,* 832 P.2d 1015 (Colo.App.1991) (telling prospective juror "You will be out of here" in approximately two and one-half days not coercive).

Defendant has not established how his right to a fair trial was otherwise prejudiced by the *ex parte* conversation. He has not demonstrated that the essential communication from the jurors that they would know by Monday if further deliberations would be productive would have been altered by the presence of counsel. Accordingly, we consider the court's speaking to the jury concerning the status of its deliberations to be harmless beyond a reasonable doubt.

### B.

Defendant also contends that, even if the trial court did not coerce the jury into becoming deadlocked, it committed prejudicial error by declaring a mistrial without making further inquiry into whether the jury was in fact deadlocked and without first delivering additional instructions. We disagree.

### 1.

■ Courts are invested with the authority to discharge the jury without its having

returned any verdict whenever, in light of all the circumstances, there is a manifest necessity to do so or if the ends of justice otherwise would be defeated. *Brown v. People*, 132 Colo. 561, 291 P.2d 680 (1955).

The determination whether to declare a mistrial is left to the sound discretion of the trial court and will not be disturbed on appeal, unless that discretion has been clearly abused and such abuse has resulted in prejudice to the defendant and a denial of justice. *Kelly v. People*, 121 Colo. 243, 215 P.2d 336 (1950). A decision to declare a mistrial upon jury disagreement without first properly determining on the record if the jury is in fact deadlocked is an abuse of discretion. *Barriner v. District Court*, 174 Colo. 447, 484 P.2d 774 (1971).

Defendant contends that, because it refused to question the jury further once it had received the note indicating that an impasse had been reached, the trial court declared a mistrial before determining that there was indeed manifest necessity for that act. We disagree.

Here, in the Friday discussion, the trial court was informed, in essence, that the jury would know by the following Monday whether further deliberations would be productive, and, on Monday, the court was advised in writing that the jury was deadlocked as to all of the charges.

The jury had by that time deliberated for over three days and the record of the communications from the jurors supports the determination that progress towards a unanimous verdict was unlikely. *See People v. Lewis*, 676 P.2d 682 (Colo.1984). Given the foregoing circumstances, we conclude that the trial court was certain that the jury was deadlocked and that a manifest necessity for declaring a mistrial existed without further questioning of the jury. *Cf. Barriner v. District Court, supra*, (trial court declared mistrial upon telephone notification of deadlock by bailiff).

### 2.

Defendant also argues that the trial court erred by refusing to deliver further instruc-

tions to the jurors before declaring a mistrial. We disagree.

Defendant requested, before declaring a mistrial, that the trial court give the jury the so-called "modified Allen charge." *See* COLJI—Crim. 38:14 (1983).

However, use of this instruction is within the trial court's discretion. *People v. Lewis, supra; People v. Ragland*, 747 P.2d 4 (Colo.App.1987). And, it should be given only in narrowly prescribed circumstances because of the compelling concern that the jury not be coerced into rendering a verdict reached only by sacrifice of conscientious opinion. Contrary to defendant's implications, use of this instruction is not a prerequisite for finding that a manifest necessity exists to declare a mistrial. *See People v. Schwartz*, 678 P.2d 1000 (Colo.1984); *cf. People v. Farley* 712 P.2d 1116 (Colo.App.1985) (supplemental instruction telling jury to reread the instructions and continue deliberations did not possess the coercive impact attendant to Allen-type instructions).

### 3.

To the extent that defendant is arguing that the combined effect of the trial court's *ex parte* conversation, its refusal to further instruct the jury, and its refusal to remind them in some manner of their responsibility to reach a verdict, reflects bad faith on the part of the court, we do not agree. There is nothing in the record to support the proposition that the trial court's actions were taken to prejudice defendant's chance for an acquittal. *See People v. Espinoza*, 666 P.2d 555 (Colo.1983).

When a criminal trial is appropriately terminated because the jury cannot agree on a verdict, re-prosecution of the accused is not barred under double jeopardy principles. *Ortiz v. District Court*, 626 P.2d 642 (Colo. 1981). Accordingly, here, re-prosecution of defendant offends no prohibition against double jeopardy. *See People v. Cisneros*, 665 P.2d 145 (Colo.App.1983).

### II.

Defendant next argues that the trial court erred on retrial in denying his challenge for

cause of a prospective juror who was employed as a security officer with the Pueblo Depot Activity. We disagree.

During voir dire, a prospective juror related that he was employed as a security officer at the Pueblo Depot Activity, an Army facility controlled by the United States Department of Defense. He indicated that his duties included searching vehicles entering the facility, plus patrolling, conducting investigations, and issuing traffic citations on the grounds of the facility. He carried a weapon as part of his duties and had the power to detain persons until the Pueblo County Sheriff's Department arrived.

Defendant challenged the prospective juror for cause as "a compensated employee of a public law enforcement agency" pursuant to § 16–10–103(1)(k), C.R.S. (1986 Repl.Vol. 8A). The trial court denied the challenge on the grounds that the federal Department of Defense is not "a public law enforcement agency." We agree with the trial court.

■ The term "public law enforcement agency" is not defined in the statute governing jury selection. Elsewhere in the statutes, however, "law enforcement agency" is typically defined so as to unequivocally include municipal police departments and county sheriff's offices. See § 12–56–101(4), C.R.S. (1991 Repl.Vol. 5B) (" 'Local law enforcement agency' means any marshal's office, police department, or sheriff's office...."); § 19–3–303(5), C.R.S. (1994 Cum. Supp.) (" 'Local law enforcement agency' means a police department in incorporated municipalities or the office of the county sheriff."); § 42–5–201(6), C.R.S. (1993 Repl. Vol. 17) (" 'Law enforcement agency' means the Colorado state patrol or the agency of a local government authorized to enforce the laws of the state of Colorado.").

Also, decisional law interprets "law enforcement agency" so as to include the Department of Corrections. See § 17–20–103, C.R.S. (1994 Cum.Supp.) ("The superintendents of all correctional facilities ... and the staff of such correctional facilities shall be conservators of the peace and as such have the power to arrest all persons who ... are found ... violating any criminal law...."); People v. Manners, 708 P.2d 1391 (Colo.App.

1985) (physician employed part time at prison medical clinic should have been excused from criminal jury); People v. Scott, 41 Colo. App. 66, 583 P.2d 939 (1978) (bakers and counselors employed by the state prisons should have been excused from criminal jury).

■ However, simply because a state or federal agency holds investigative powers or has contact with law enforcement personnel does not render the agency a "public law enforcement agency" within the meaning of the statute. See People v. Zurenko, 833 P.2d 794 (Colo.App.1991) (neither Department of Social Services nor Equal Employment Opportunity Commission is a law enforcement agency for purposes of § 16–10–103(1)(k)); People v. Rogers, 690 P.2d 886 (Colo.App. 1984) (firefighter at Rocky Mountain Arsenal not an employee of a public law enforcement agency).

We are not unmindful of the admonition that "[t]o insure that a jury is impartial in both fact and appearance, a prospective juror who has even a tenuous relationship with any prosecutorial or law enforcement arm of the state should be excused from jury duty in a criminal case." People in Interest of R.A.D., 196 Colo. 430, 432, 586 P.2d 46, 47 (1978); see also Tate v. People, 125 Colo. 527, 538, 247 P.2d 665, 670 (1952) ("The well-reasoned cases in other jurisdictions hold that police officers and law-enforcement officials should not be allowed to serve on juries in criminal cases."). We conclude, however, that the Pueblo Depot Activity is not a prosecutorial or law enforcement arm of the government.

The record of the prospective juror's voir dire indicates that the Pueblo Depot Activity is an Army Department facility overseen by the federal Department of Defense. The function of the Department of Defense is to maintain and employ armed forces to defend and secure the United States, its possessions, and areas of vital national interest against foreign and domestic enemies. See 32 C.F.R. § 368.3 (1993). This is in contrast to an agency such as the Department of Corrections, which has as an explicit statutorily mandated purpose, inter alia, to enforce the peace and to arrest violators.

That the functions of the Department of Defense require it to maintain security measures at its facilities, and to hire civil security guards who conduct investigations and searches, does not transform the Army and its various installations into a law enforcement arm of the government. *Cf. Evans v. State,* 38 Ala.App. 45, 78 So.2d 315 (1954) (position as private security guard does not constitute employment as a law enforcement officer); *State v. Matthews,* 291 S.C. 339, 353 S.E.2d 444 (1986) (employment with criminal investigation division of the Navy did not disqualify juror under statute excluding from criminal jury service any judge, court employee, constable, or sheriff); *State v. Worley,* 179 W.Va. 403, 369 S.E.2d 706 (1988) (part-time work as city fire department arson investigator does not constitute employment in a law enforcement or prosecutorial agency.).

Insofar as defendant contends that, even though he did not demonstrate any actual bias, the prospective juror equated his role with that of other law enforcement officials because he performed some of the same duties and therefore bias may be implied, we note that the supreme court has recently rejected the view that implied bias, apart from the statutory scheme, may be used to create an automatic exclusion. *See People v. Rhodus,* 870 P.2d 470 (Colo.1994) (county clerk and recorder not disqualified automatically because her office is represented in legal matters by the county district attorney's office).

The record of the voir dire reflects no actual bias on the part of this prospective juror. Hence, the trial court did not err in denying defendant's challenge for cause. *See People v. Rhodus, supra; People v. Zurenko, supra.*

### III.

Defendant also contends that the trial court erred by excluding testimony supportive of his claim that he purchased the hunting knife because he was interested in taking up hunting as a hobby. We agree that the testimony should have been admitted, but conclude that the error was harmless.

The testimony in question concerned defendant's having accompanied a friend when the friend went hunting. As the prosecution contends, it is relevant only on the issue of deliberation. But, as to that issue, we view it as being at least minimally probative of an innocent motive for the knife being in defendant's vehicle on the fatal night. Hence, such evidence should have been admitted.

The jury, however, even without the offered testimony, did not find that the prosecution had established deliberation beyond a reasonable doubt. Therefore, any error in its exclusion was harmless under the circumstances. *See People v. Steele,* 193 Colo. 87, 563 P.2d 6 (1977).

### IV.

Defendant next claims the trial court erred in refusing to instruct the jury on the lesser non-included offense of second degree sexual assault. Again, we do not agree.

Defendant was charged with two counts of first degree sexual assault, which offense requires that the victim's submission must have been caused "through the actual application of physical force or physical violence." Section 18–3–402(1)(a), C.R.S. (1986 Repl.Vol. 8B). Although defendant's statement to police indicated that his wife had consented to sexual intercourse, these charges were added when investigators determined that her clothing had been torn in several places and sliced by a sharp object in others.

Defendant does not contend that this evidence was insufficient to support a charge of first degree sexual assault, but does argue that the lack of conclusive evidence as to the means used to obtain submission required that the jury also be allowed to consider a charge of second degree sexual assault pursuant to § 18–3–403(1)(a), C.R.S. (1986 Repl. Vol. 8B), which requires that submission of the victim be by means other than those present in first degree sexual assault. *See* § 18–3–403(1)(a), C.R.S. (1986 Repl.Vol. 8B).

Before the jury may be instructed as to a lesser non-included offense, there must be evidence supportive of a rational basis for an acquittal on the charged offense and a

guilty verdict on the lesser offense. *See People v. Shields,* 822 P.2d 15 (Colo.1991); *People v. Bustos,* 725 P.2d 1174 (Colo.App. 1986).

■ Here, however, the jury heard evidence that the victim's clothing was torn and cut from her, which evidence is probative of there being a sexual assault by use of actual physical force. The only other evidence before the jury as to that sexual encounter was defendant's statement to the police that his wife had consented, which testimony would tend to show only that there had been no sexual assault in any degree.

Thus, there was nothing before the jury to indicate that the victim's submission to sexual intercourse, if non-consensual, had been caused by some means other than actual physical force. Therefore, the trial court did not err by refusing to instruct the jury as to second degree sexual assault. *See People v. Bustos, supra.*

## V.

■ Defendant next argues that the trial court erred in refusing to submit his tendered jury instructions on the prosecution's burden of proof as to the absence of heat of passion. We find no error.

According to defendant, his due process rights were violated by the failure to instruct the jury that the prosecution was required to prove the absence of heat of passion beyond a reasonable doubt before the jury could find him guilty of either first degree or second degree murder. Because of that omission, he contends that the jury may have convicted him of second degree murder even if it found evidence of provocation.

A similar argument was raised and rejected by this court in *People v. Seigler,* 832 P.2d 980 (Colo.App.1991). In that case, as here, the jury was instructed that if it found that the prosecution had not proved all of the elements of the charge of first degree murder beyond a reasonable doubt it should consider any of the lesser offenses. The jury was further instructed, as here, that the burden of proof is always on the prosecution to prove each and every element of any lesser offense beyond a reasonable doubt.

Here, the jury did not find that the prosecution had proven every element of first degree murder after deliberation. Pursuant to proper instructions, it was free to consider both second degree murder and provoked passion manslaughter. It was not instructed that it was required first to consider and reject second degree murder before it could consider provoked passion manslaughter.

The jury was instructed that the prosecution was required to prove the elements of each crime charged and of any lesser offenses and was instructed that at no time did the law impose any burden of proof upon defendant. Therefore, we perceive no reason to presume that the "jury failed to consider whether the prosecution proved that [defendant] did not act under the heat of passion." *People v. Seigler, supra,* 832 P.2d at 984.

## VI.

Defendant also argues that his conviction of first degree sexual assault is inconsistent with his acquittal on the charge of felony murder and must therefore be vacated. Because the death occurred close in time, and at the same locality, as the sexual assault which comprises the underlying felony, he argues that we should find, as a matter of law, that these two events occurred as part of a single continuous transaction and, thus, that the death necessarily occurred in the course of or in furtherance of the felony. Therefore, he contends, the jury must have accepted the prosecution's evidence as to the sexual assault charge but simultaneously rejected the same evidence in order to acquit on the felony murder charge. We disagree.

"Legally inconsistent verdicts requiring reversal result from the irreconcilable rejection by the jury of evidence it relied upon to convict on one charge, in order to acquit on another charge." *People v. Rodriguez,* 888 P.2d 278, 284–85 (Colo.App.1994); *see Robles v. People,* 160 Colo. 297, 417 P.2d 232 (1966) (jury verdict of guilty on conspiracy to commit robbery charge irreconcilable with acquittal on robbery charge based upon same evidence); *People v. Castenada,* 765 P.2d 641 (Colo.App.1988) (jury verdict on aggravated robbery charge irreconcilable with acquittal

on crime of violence charge based upon same evidence of the possession and use of a deadly weapon).

■ Jury verdicts will not be reversed for inconsistency, however, if the two charges include separate and distinct elements and the jury could find from the same evidence that the elements of one crime were present while at the same time finding that an element of the other crime was absent. *See People v. Strachan,* 775 P.2d 37 (Colo.1989). So long as the evidence is such that a jury could find reasonable doubt as to any distinct element of the other crime, the verdicts are not inconsistent. *See People v. Noble,* 635 P.2d 203 (Colo.1981).

■ When a homicide is perpetrated within the *res gestae* of the commission of the initial felony, the homicide is committed in the course of that felony for purposes of a felony murder charge. *See Bizup v. People,* 150 Colo. 214, 371 P.2d 786 (1962). If there is evidence sufficient to support a reasonable inference that the death took place during the same transaction as the felony, it is proper to instruct the jury as to the elements of the charge of felony murder. *Roybal v. People,* 177 Colo. 144, 493 P.2d 9 (1972).

■ Under the proper circumstances, a jury might reasonably conclude that a death did not take place within the same transaction as the underlying felony and return a verdict of guilty to the felony charge and not guilty to the felony murder charge. *See People v. McLean,* 633 P.2d 513 (Colo.App. 1981) *rev'd on other grounds,* 661 P.2d 1167 (Colo.1983).

Although no Colorado appellate court has addressed the issue, other jurisdictions have determined that whether the underlying felony was completed, terminated, or abandoned, is ordinarily a question of fact for the jury, and only when the record compels no other inference than that the felony was concluded before the death occurred would the matter be a question of law. *See People v. Slaughter,* 577 N.Y.S.2d 206, 78 N.Y.2d 485, 583 N.E.2d 919 (N.Y.App.1991); *see also State v. Herrera,* 174 Ariz. 387, 850 P.2d 100 (1993); *People v. Johnson,* 5 Cal.App.4th 552, 7 Cal. Rptr.2d 23 (1992); *State v. Linn,* 251 Kan.

797, 840 P.2d 1133 (1992); *Payne v. State,* 81 Nev. 503, 406 P.2d 922 (1965); *Bouwkamp v. State,* 833 P.2d 486 (Wyo.1992); *cf. Patterson v. State,* 306 Ark. 385, 815 S.W.2d 377 (1991).

Under the record here, it does not necessarily follow that, simply because the jury found that a sexual assault took place, it could not also find that the prosecution did not prove that the death occurred in the course of, or furtherance of, the sexual assault. Defendant's theory of the case, as it was presented to the jury, was that the death occurred during a struggle for control of the hunting knife that was the climax of an argument that had begun sometime after the sexual intercourse. Evidence of delay between the sexual act and the argument was before the jury in the form of defendant's statements to police taken immediately after the incident. The evidence presented was thus such that the jury could have determined that the sexual assault was completed before the stabbing occurred.

## VII.

Defendant's final claim of error is that his sexual assault conviction, which raised the second degree kidnapping conviction to a class 2 felony, is violative of the double jeopardy clause of the United States Constitution. Defendant acknowledges that this argument has been raised and resolved against him in *People v. Henderson,* 810 P.2d 1058 (Colo.1991). Because that decision represents controlling authority and is dispositive of this issue, we need not consider further defendant's contentions.

The judgments are affirmed.

HUME and BRIGGS, JJ., concur.