OPINION OF THE COURT
Hancock, Jr., J.
 After a jury trial, defendant was convicted of felony murder, attempted robbery in the first degree, and related crimes. The felony murder count arose from a high-speed chase, following the attempted robbery, which resulted in the getaway vehicle crashing into and killing a passenger in another vehicle. Defendant’s appeal presents two issues: (1) whether the evidence adduced at trial was legally sufficient to *488 support defendant’s guilt of felony murder as a homicide occurring during the immediate flight from the attempted robbery and (2) whether the suppression hearing court’s failure to undertake a sufficiently searching inquiry of defendant to be reasonably certain that he understood the dangers and disadvantages of proceeding pro se requires reversal. The jury here could properly have found that the homicide occurred in the immediate flight from the attempted robbery. However, the failure of the court below to make the required inquiry before defendant proceeded pro se is not harmless error; therefore, we reverse.
I
A brief summary of the facts and of the procedural history is necessary. Defendant, along with three accomplices, allegedly attempted to rob a warehouse. The robbery failed when one of the warehouse employees called the police, and defendant and his accomplices fled in a green van. Police responded to the report of the crime and, about 10 minutes after the crime began, a description of the van including the license plate number was broadcast over the police radio. Approximately 15 minutes after the broadcast and 1 Vi to 2 miles from the warehouse, police saw the van. A high-speed chase ensued and ended when the van collided with another vehicle, resulting in the death of a passenger. Defendant was immediately apprehended.
After the indictment, a suppression hearing was commenced on February 26, 1987 to determine whether statements made by defendant to the police could be admitted against him at trial. Before the hearing began, defendant expressed a lack of confidence in his court-appointed attorney and requested new counsel. He acknowledged that his attorney had visited him three times and had discussed the case with him. The court refused to appoint new counsel "in view of the fact that this case is ready for hearing” and told defendant that it would rehear his application after the hearing was concluded.
On March 18, 1987, the third day of the hearing, defendant made a written application to the hearing court for the appointment of new counsel. Upon the court’s inquiry, counsel said that he had visited defendant on various occasions, made motions on his behalf, and reviewed all the hearing minutes and police reports. The hearing court denied defendant’s application stating that it would be unfair to defendant to *489 relieve counsel in the middle of a hearing and reserved ultimate decision on defendant’s request until the. hearing’s conclusion.
On April 8, 1987, the fourth day of the hearing, Police Officer Murray revealed during cross-examination that he had 50 to 60 pages of handwritten notes relating to the investigation of defendant’s case which the prosecution had not yet provided to the defense. Defendant’s counsel was given a brief opportunity to review 10 pages of the notes regarding Officer Murray’s interview of defendant; the court directed that the balance should be provided after the prosecutor had redacted information identifying witnesses. Defendant’s counsel reserved his right to recall Officer Murray after he had the chance to review the redacted notes, remarking that defendant had not yet decided whether to testify but would do so before the next hearing date.
On April 27, 1987, the fifth and final day of the hearing, defense counsel stated that defendant had refused to discuss the case with him. He noted that he had received Officer Murray’s notes but, because defendant would not talk to him, he could not determine whether to cross-examine Officer Murray on the notes or whether defendant would testify. The hearing court then informed defendant that if he no longer wanted to be represented by his assigned counsel, he could represent himself. It told defendant that he would get no assistance from the court in questioning witnesses nor with regard to his constitutional rights, that he could ask any legally permissible question, but that the court would not appoint new counsel at that stage of the hearing. The court requested that defendant’s released attorney remain present to offer defendant advice if requested.
Proceeding pro se, defendant requested time to review the recently provided notes of Officer Murray, which defendant had never seen, so that he could decide whether further cross-examination was necessary. The court responded: "You want to ask Sergeant Murphy [sic] any questions, you want to take the stand on your own behalf? You make that decision now. We are not going any further with this beyond today.” Defendant reiterated that he was unable to make these decisions without reviewing the officer’s notes. The hearing court stated that the papers had been in the hands of his attorney for a week, and summarily ruled that the hearing was concluded. Thereafter, it denied the suppression of both sets of statements allegedly made by defendant.
*490 After trial, at which defendant was represented by new counsel, a jury convicted defendant of murder in the second degree, attempted robbery in the first degree, criminal possession of a weapon in the second degree and the third degree, reckless endangerment in the first degree, and leaving the scene of an accident. Thereafter, the Appellate Division affirmed, holding, in part, that the hearing court’s failure to conduct a searching inquiry of defendant — to be reasonably certain that he knowingly and intelligently chose to proceed pro se — was harmless error. That court also concluded that the evidence was sufficient for the jury to determine that the homicide occurred in the immediate flight from the attempted robbery and unanimously affirmed the conviction for felony murder. A Judge of this Court granted leave, and we now reverse.
II
Defendant contends that the evidence adduced at trial was legally insufficient to support his guilt of felony murder because the homicide did not occur during the immediate flight from the alleged attempted robbery. He notes that when the van was first observed by the police, it was turning towards, not fleeing from, the warehouse and was traveling at a legal speed; two of the accomplices had been dropped off; and defendant had stopped to buy a soda and some cigarettes — all indicating that the flight from the crime had been completed prior to the start of the high-speed chase. We disagree.
A felony murder is committed when a person, acting alone or in concert with others, commits or attempts to commit certain predicate felonies, including robbery, and "in the course of and in furtherance of such crime or of immediate flight therefrom, he * * * causes the death of a person other than one of the participants” (Penal Law § 125.25 [3] [emphasis added]; People v Gladman, 41 NY2d 123, 125). Whether the homicide occurred in "immediate flight” from a felony is generally a question of fact for the jury and is one of law for resolution by the court only where the record compels the inference that the actor was not in immediate flight (People v Gladman, 41 NY2d 123, 129, supra). Relevant factors which the jury should be instructed to consider are: "whether the homicide and the felony occurred at the same location or, if not, * * * the distance separating the two locations[,] * * * whether there is an interval of time between the commission *491 of the felony and the commission of the homicide[,] * * * whether the culprits had possession of the fruits of criminal activity, whether the police * * * were in close pursuit, and whether the criminals had reached a place of temporary safety” (id., at 129).
Here, the van was first observed only IV2 to 2 miles away from and 15 to 20 minutes after the occurrence of the crime. Upon observing the police, defendant and codefendant drove away at a high speed to avoid apprehension. At the time of the homicide, defendant and one of his accomplices were still driving in the getaway vehicle, had not reached a place of temporary safety, and were speeding to escape pursuing police who sought to arrest them for the felony which serves as the predicate for the murder conviction. Given the circumstances and particularly the proximity in time and distance between the robbery and. the homicide, we cannot say that the brief interruption in the flight from the crime scene and the van’s direction toward the scene when first observed by police were sufficient, as a matter of law, to preclude a conclusion that when the homicide occurred defendant and his accomplice were still in the course of "immediate flight”. This question was properly submitted to the jury as a factual matter.
Ill
The hearing court’s failure to warn defendant of the risks inherent in proceeding pro se requires a new suppression hearing, however. By representing himself, a defendant is necessarily foregoing the benefits associated with the right to counsel (see, People v McIntyre, 36 NY2d 10, 17; Faretta v California, 422 US 806). For such a waiver to be effective, the court must be satisfied that it was unequivocal, voluntary and intelligent (see, People v McIntyre, supra; People v Sawyer, 57 NY2d 12, 21). To ascertain that it is, the "court should undertake a sufficiently 'searching inquiry’ of the defendant to be reasonably certain that the 'dangers and disadvantages’ of giving up the fundamental right to counsel have been impressed on the defendant (see Faretta v California, 422 US 806, 835, supra; People v White, 56 NY2d 110, 117)” (People v Sawyer, supra, at 21; see, People v Smith, 68 NY2d 737, 738; People v Mitchell, 61 NY2d 580, 584; People v Kaltenbach, 60 NY2d 797, 798-799).
In this case, the record amply demonstrates that the hearing court failed to make the required searching inquiry of *492 defendant to insure that he was aware of the dangers and disadvantages of proceeding without counsel. Indeed, the court made no inquiry but merely informed defendant that he would get "no assistance from the [c]curt”. Thus, defendant’s waiver of his right to counsel was ineffective (see, People v Mitchell, supra; People v Sawyer, supra).
Nonetheless, the People contend that defendant abandoned his claim of ineffective waiver of counsel because his new counsel failed to seek reopening of the suppression hearing. We disagree. The court left no doubt that it considered the matter completed and that it perceived no error in its summary conclusion of the hearing. There is no suggestion that prior to trial, the trial court (the same Justice who conducted the hearing) asked defendant’s new counsel whether he would seek reopening of the hearing. It is speculative, at best, whether the court would have granted a motion to reopen the hearing had it been made. We decline to hold that, of itself, the lack of a request to reopen constitutes an abandonment of defendant’s preserved constitutional claim (see, People v Leisner, 73 NY2d 140, 147).
The People also argue that the hearing court’s failure to warn defendant about the dangers of proceeding pro se was harmless error. Again, we disagree. Assuming, without deciding, that harmless error analysis applies here (cf., People v Hilliard, 73 NY2d 584, 587 [harmless error doctrine does not apply to an affirmative denial of the constitutional right to counsel]), we hold that defendant’s ineffective waiver of counsel was not harmless.
Because of the hearing court’s denial of defendant’s repeated requests for new counsel, he was compelled to proceed pro se without the required inquiry by the court. At this point in the hearing defendant was faced with deciding whether to testify at the hearing and whether to continue cross-examinatian of the People’s key police witness on the belatedly supplied Rosario material and conducting these critical proceedings if warranted. The Appellate Division held that the court’s error "did not serve to deprive the defendant of a fair hearing since the hearing was for all intents and purposes completed, and the defendant also had counsel available to him for consultation” (162 AD2d 640, 641). This holding ignores the facts that it was the court which had summarily terminated the hearing over defendant’s protests and that defendant had no confidence in his former counsel and had repeatedly re *493 fused to consult with him. In sum, a reasonable possibility existed that defendant’s ineffective waiver of his constitutional right to counsel might have contributed to defendant’s conviction; thus, the error was not harmless (see, People v Crimmins, 36 NY2d 230, 237-238).
Accordingly, the order of the Appellate Division should be reversed and the case remitted to Supreme Court, Queens County, for a new suppression hearing, and, in the event that defendant prevails thereon, for a new trial.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order reversed and case remitted to Supreme Court, Queens County, for further proceedings in accordance with the opinion herein.