[794 NYS2d 524]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MIKEL WARDLAW, Appellant.

Fourth Department, April 29, 2005

## APPEARANCES OF COUNSEL

*The Legal Aid Bureau of Buffalo, Inc.*, Buffalo (*Mary Good* of counsel), for appellant.

*Frank J. Clark, District Attorney*, Buffalo (*Susan C. Ministero* of counsel), for respondent.

## OPINION OF THE COURT

KEHOE, J.

On this appeal by defendant from a judgment convicting him of crimes involving his sexual abuse of a child, we address the issue that the Court of Appeals declined to decide in *People v Slaughter* (78 NY2d 485, 492 [1991]), i.e., whether the denial of a defendant's right to be represented by counsel at a pretrial suppression hearing is subject to harmless error analysis. We hold that harmless error analysis applies and that the error is harmless under the circumstances of this case.

### I

By judgment of Erie County Court, defendant was convicted upon a jury verdict of one count each of rape in the first degree (Penal Law § 130.35 [3]), sodomy in the first degree (former § 130.50 [3]), sexual abuse in the first degree (§ 130.65 [3]), and endangering the welfare of a child (§ 260.10 [1]), as well as two counts of incest (§ 255.25). Those charges stemmed from the sexual molestation by the 45-year-old defendant of his nine-year-old niece at her home on February 19, 2002. At the time, defendant was staying with his half-sister and her seven children, including the victim, whom the half-sister had left in defendant's care for the evening. At trial, at which defendant was represented by counsel, the victim testified that, after the other children had gone to sleep, defendant and the victim were on the couch in the living room, watching a movie, when defendant touched the victim's vagina. Defendant then carried the victim into a bedroom, where defendant licked her vagina and "stuck his penis in" her vagina. Afterwards, defendant told the victim to "go and wash off." The victim did as she was told and then, according to the trial testimony of both the victim and her older brother, woke her older brother and told him that defendant had raped her. The victim then went to bed but, according to the trial testimony, also told her mother about the rape early

the next morning. The authorities were summoned, the victim was taken to the hospital for examination, and defendant was questioned. The People's medical evidence established that the victim's hymen was "widened" and red on one side and that the victim's vagina contained a white discharge that was unusual in its color, consistency and amount for a young girl. Further, forensic DNA analysis established that defendant's semen was found on the vaginal and anal areas of the victim. Finally, the People adduced proof of certain statements made by defendant to police interrogators, which statements were ruled admissible following a *Huntley* hearing conducted to evaluate the contention that defendant's *Miranda* rights were violated.

In testifying on his own behalf, defendant denied having any sexual contact with the victim. He had no explanation for the presence of his semen on the victim.

Defendant was sentenced as a second felony offender to various concurrent terms of incarceration, the longest of which are determinate terms of 21 years imposed on the rape and sodomy counts, to be followed by five years of postrelease supervision.

## II

On appeal, defendant's primary contention is that the court committed reversible error in allowing defendant to proceed pro se at the *Huntley* hearing without conducting the requisite "searching inquiry" into the voluntariness of his waiver of the right to be represented by counsel. Defendant also contends that he was denied effective assistance of counsel as a result of his trial counsel's acquiescence to an erroneous and prejudicial jury charge on the definition of sexual intercourse; that he was deprived of a fair trial by the admission of prejudicial and unnecessary expert testimony; that the court erred in denying his *Batson* motion; and that the sentence is unduly harsh or severe.

## III

At the outset, we note our agreement with defendant that the court erred in accepting his waiver of the right to counsel and allowing him to proceed pro se at the *Huntley* hearing, thus depriving him of his constitutional right to be represented by counsel at that hearing. The court failed to "undertake a sufficiently 'searching inquiry' of the defendant to be reasonably certain that the 'dangers and disadvantages' of giving up the fundamental right to counsel [were] impressed on the defendant" (*People v Sawyer*, 57 NY2d 12, 21 [1982], *rearg dismissed*

57 NY2d 776 [1982], *cert denied* 459 US 1178 [1983]; *see Faretta v California*, 422 US 806, 835 [1975]; *see also Slaughter*, 78 NY2d at 491-492; *see generally People v Providence*, 2 NY3d 579, 582 [2004]; *People v Arroyo*, 98 NY2d 101, 103-104 [2002]).

## IV

We assume, arguendo, that the court's error in permitting defendant to proceed pro se at the *Huntley* hearing led to the erroneous admission at trial of the statements that were the subject of that hearing. We do so notwithstanding that the uncontroverted hearing evidence established that defendant was not in custody during questioning, that his statements in any event were preceded by valid oral and written waivers of his *Miranda* rights, that defendant's request for a lawyer was made after defendant made the statements, and that the questioning was terminated immediately upon such request. That evidence fully supports the suppression court's conclusion that the statements were voluntary within the meaning of CPL 60.45. However, we emphasize that the nature of the proof adduced at the *Huntley* hearing with regard to the issue of suppression plays no part in our analysis of whether the error in allowing defendant to proceed pro se at that hearing is harmless. That is because the deprivation of counsel at the hearing surely invalidated the hearing itself (*cf. People v Wicks*, 76 NY2d 128, 132-133 [1990], *rearg denied* 76 NY2d 773 [1990]; *People v Felder*, 47 NY2d 287, 295-296 [1979]). We further recognize that the usual remedy for a defendant who was deprived of his right to be represented by counsel at a suppression hearing would be remittal for a de novo suppression hearing and, if the evidence were then suppressed, a new trial (*see Slaughter*, 78 NY2d at 493; *see also People v Carracedo*, 89 NY2d 1059, 1061-1062 [1997]; *People v Jones*, 145 AD2d 648, 649-650 [1988]; *People v Speller*, 133 AD2d 865 [1987]). That is because "[t]he denial of counsel at a [pretrial] hearing . . . does not necessarily invalidate the trial" or the resultant conviction (*Wicks*, 76 NY2d at 133; *see Carracedo*, 89 NY2d at 1061-1062; *Jones*, 145 AD2d at 649-650). In our view, the limited nature of the prescribed remedy renders it inappropriate here to hold the case and remit the matter for a de novo suppression hearing because, even if the statements should have been suppressed, any error in their admission at trial is harmless beyond a reasonable doubt (*see People v Crimmins*, 36 NY2d 230, 237 [1975]).

## V

In its decision in *Slaughter*, the Court of Appeals assumed, without deciding the issue, that a claim of an ineffective waiver by the defendant of his right to be represented by counsel at a pretrial suppression hearing was subject to harmless error analysis, and the Court determined that the error was not harmless in that instance (*see* 78 NY2d at 492; *see also People v Smith*, 243 AD2d 738, 739 [1997], *affd* 92 NY2d 516 [1998] [assuming, without deciding, that harmless error analysis applies to the denial of the right to counsel at a pretrial hearing, and holding that the error was not harmless]; *People v Carracedo*, 214 AD2d 404 [1995], *appeal decided following remittal for de novo suppression hearing* 228 AD2d 199 [1996], *affd* 89 NY2d 1059 [1997] [applying harmless error analysis to the denial of the right to counsel at a pretrial suppression hearing, holding that the denial was not harmless error in that case, holding the appeal in abeyance and remitting the matter for a de novo suppression hearing]; *cf. Wicks*, 76 NY2d at 132-134 [holding that the denial of the right to counsel at a preindictment preliminary hearing stage is subject to harmless error analysis and was harmless error in that case]; *People v Hodge*, 53 NY2d 313, 320-321 [1981] [holding that the denial of the right to counsel at a preliminary hearing may be harmless error, but was not in that case]). In *Slaughter*, the suppression court had not merely improperly ordered the defendant to proceed pro se at the suppression hearing but had summarily and rather punitively concluded the hearing and, in so doing, had thwarted the defendant's exercise of the right to review *Rosario* material and to cross-examine a police witness using that material (*see* 78 NY2d at 489). With respect to those errors, the Court of Appeals in *Slaughter* (78 NY2d at 492) stated:

> "The People also argue that the hearing court's failure to warn defendant about the dangers of proceeding *pro se* was harmless error. Again, we disagree. Assuming, without deciding, that harmless error analysis applies here (*cf.*, *People v Hilliard*, 73 NY2d 584, 587 [harmless error doctrine does not apply to an affirmative denial of the constitutional right to counsel]), we hold that defendant's ineffective waiver of counsel was not harmless."

As indicated, the Court of Appeals rectified the error by remitting the matter "for a new suppression hearing, and, in the event that defendant prevails thereon, for a new trial" (*id.* at 493; *see Carracedo*, 89 NY2d at 1061-1062).

In *Hilliard* (73 NY2d 584 [1989]), the defendant, an inmate, had been charged with assaulting a correction officer. Following his arrest on that charge, and as a consequence of his refusal "to quiet down" at his arraignment, at which the defendant was represented by counsel, the Town Justice adjudicated the defendant to be in contempt of court (*id.* at 586). As defendant's punishment for that contempt, the court barred defense counsel from visiting the defendant for 30 days following the arraignment. Approximately two months after that order expired, the defendant was convicted following a trial at which he was represented by counsel. The People conceded that the Town Justice erred in barring defense counsel from consulting with his client for 30 days but contended that the error was harmless inasmuch as defendant had been represented at arraignment and at trial. The Court of Appeals disagreed, deeming the Town Justice's actions to be per se reversible error. The Court noted that, as it previously stated in *Crimmins*, "there are some errors which are so serious that they operate to deny defendant's fundamental right to a fair trial. In such cases the reviewing court must reverse the conviction and grant a new trial, without evaluating whether the errors contributed to the defendant's conviction" (*id.* at 586-587). The Court thus "refuse[d] to apply the harmless error doctrine" (*id.* at 587). The *Hilliard* court further stated, however, that "[t]he [Town Justice's] ruling, entered at the time of arraignment, affected defendant's representation in such a way that the error cannot be corrected by a new trial" (*id.*, citing *People v Felder*, 47 NY2d 287, 296 [1979]). Consequently, the Court held that the order of the Appellate Division should be reversed and the indictment dismissed (*see id.*).

In its decision in *Felder* (47 NY2d at 291), the Court refused to apply harmless error analysis with respect to the convictions of four defendants who had been denied their right to counsel at trial or during plea proceedings as a result of being "represented by a layman masquerading as an attorney." The Court noted that "[t]here are some errors which operate 'to deny [an] individual defendant his fundamental right to a fair trial [in which event], the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant's conviction'" (*id.* at 295, quoting *Crimmins*, 36 NY2d at 238).

In synthesizing the foregoing decisions, we conclude that the denial of a defendant's right to be represented by counsel at

trial is not subject to harmless error analysis (*see id.*; *see also People v Margan*, 157 AD2d 64, 69 [1990]; *People v Anderson*, 125 AD2d 580, 581 [1986]; *People v Bonds*, 99 AD2d 759 [1984]). With respect to the denial of counsel at a pretrial stage, we note that *Hilliard* is distinguishable from this case on its facts and that the Court of Appeals granted the defendant in that case a unique remedy, i.e., an outright dismissal of the indictment. In both *Felder* and *Slaughter*, however, and in contrast to *Hilliard*, the Court of Appeals remedied the denial of the defendant's right to be represented by counsel by remitting for further proceedings: new trials for each of the four defendants in *Felder*, and a new suppression hearing in *Slaughter*, to be followed by a new trial only if defendant prevailed at the suppression hearing. Moreover, the decisions in *Felder* and *Hilliard*, in contrast to the decision in *Slaughter*, do not acknowledge the possibility of applying harmless error analysis. Of those cases, *Slaughter* is the most analogous factually to this case, but the facts in *Slaughter* were significantly more favorable to the defendant therein. Moreover, we note that, in its subsequent decision in *Carracedo* (89 NY2d at 1062), the Court of Appeals distinguished between two situations—deprivation of the right to counsel at a pretrial suppression hearing as opposed to deprivation at the subsequent trial. With respect to deprivation of the right to counsel at a pretrial suppression hearing, the Court addressed both the propriety of remitting for only a de novo suppression hearing and "the need to conduct a prejudice analysis" before granting a defendant any further relief, particularly including a new trial. (*Id.*)

## VI

Based on the foregoing distinctions in the controlling cases and the concerns peculiar to each factual situation, we conclude that the deprivation of a defendant's right to counsel at a pretrial suppression hearing is subject to constitutional harmless error analysis (*see Carracedo*, 214 AD2d at 404; *cf. Slaughter*, 78 NY2d at 492-493). In our view, the denial of the right to counsel at a pretrial suppression hearing must be subject to harmless error analysis. As an obvious illustration of the principle, we hypothesize a situation in which a defendant was improperly permitted to proceed pro se but nevertheless succeeded in obtaining suppression of the evidence in question. The only logical outcome would be to apply harmless error analysis in that instance. We recognize, however, the distinctions between that hypothetical situation and the case before us.

We conclude that, in this case, the error is harmless beyond a reasonable doubt (*see Crimmins*, 36 NY2d at 237; *see also* CPL 470.05 [1]; 470.15 [1]). Here, defendant has been convicted based upon evidence that is truly overwhelming on the issue of his guilt. Such evidence includes the testimony of the victim that defendant touched and licked her vagina and "stuck his penis in" her vagina; testimony concerning her prompt and persistent complaints of such rape; and testimony concerning her "very distraught" condition in the aftermath of the incident. Importantly, the People also presented unrefuted physical evidence, including evidence that defendant's DNA was found in semen obtained from swabs of the victim's vagina and anus during a medical examination conducted on the morning after the crimes occurred. The People's expert serologist testified that defendant was "the source of the male DNA that was recovered from" those vaginal and anal swabs. The expert further testified to a finding that the DNA of the sperm on the vaginal and anal swabs matched that of defendant against odds of one in one quadrillion.

In the face of such evidence, even if extremely self-incriminating statements had been ruled admissible at the *Huntley* hearing and received at trial, they would have had almost no incremental impact on the issue of defendant's guilt. Here, however, defendant's statements were barely, if at all, incriminating. A detective who interrogated defendant in the matter testified at the *Huntley* hearing and at trial that defendant initially gave a written statement denying that he had engaged in any sexual contact with the victim. The detective further testified that, after he confronted defendant with the fact that his semen had been found in the victim, defendant orally stated that he had not "do[ne] anything" or "forced her to do anything." A suspect's denial of criminal liability for forcible rape might in other circumstances be some evidence of the suspect's consciousness of guilt of statutory sex crimes but, here, viewed in the context of the entire statement, defendant's statement cannot be regarded as even an implicit admission of culpability for statutory rape or any other crime. Further, when asked what would happen if the semen were determined to be his, defendant told the detective, "Well, I would just have to take my punishment." That statement, to the extent that it is probative of anything, is only marginally inculpatory in the context of the hypothetical question and explicit denials that preceded it.

More to the point here, the statements of defendant were of negligible value to the prosecution relative to the DNA and other evidence of defendant's guilt. In light of such overwhelming evidence, there is no reasonable possibility that the statements of defendant contributed to his conviction (see *Crimmins*, 36 NY2d at 237; cf. *Slaughter*, 78 NY2d at 493). Any error in connection with the manner in which the hearing was conducted, including the deprivation of defendant's right to counsel thereat, could not have contributed to the jury's verdict of guilty because of the overwhelming evidence of guilt apart from the evidence that was the subject of the hearing. A new trial, at which the People's proof still would include the victim's identification testimony and the medical and the DNA evidence even if not defendant's statements, could not plausibly have an outcome different from that of the trial resulting in the conviction herein. Under the circumstances of this case, holding the case and remitting the matter for a new suppression hearing and possibly for a new trial, the remedy ordinarily accorded to a defendant who has been denied the right to counsel at a pretrial suppression hearing (see *Carracedo*, 89 NY2d at 1061-1062; *Slaughter*, 78 NY2d at 493), would be a pointless exercise.

## VII

We briefly address defendant's remaining contentions. The court's charge defining sexual intercourse was proper (see *People v Berardicurti*, 167 AD2d 840, 841 [1990]; see also *People v Williams*, 259 AD2d 509 [1999], *lv denied* 93 NY2d 1007 [1999]), and thus we reject defendant's contention that defense counsel was ineffective in failing to object to that charge (see *People v Fogarty*, 12 AD3d 854, 857 [2004]; *People v Johnson*, 307 AD2d 384, 385 [2003], *lv denied* 1 NY3d 574 [2003]; *People v Grippo*, 124 AD2d 985, 986-987 [1986], *lv denied* 69 NY2d 881 [1987]). Defendant was not deprived of a fair trial by the admission of the expert pediatric testimony (see *People v Cronin*, 60 NY2d 430, 432-433 [1983]; see also *People v Taylor*, 75 NY2d 277, 292-293 [1990]). The court did not err in denying defendant's *Batson* motion. The court properly determined that the People provided race-neutral explanations for exercising peremptory challenges with respect to the prospective jurors in question (see *People v Ball*, 11 AD3d 904 [2004], *lv denied* 3 NY3d 755 [2004]; *People v Linen*, 5 AD3d 1022, 1022-1023 [2004]; *People v Harris*, 1 AD3d 881, 882 [2003], *lv denied* 2 NY3d 740 [2004]), and defendant failed to meet his burden of establishing that

those explanations were pretextual (*see Harris*, 1 AD3d at 882; *People v Welch*, 298 AD2d 903 [2002], *lv denied* 99 NY2d 565 [2002]; *see generally People v Smocum*, 99 NY2d 418, 422 [2003]). Finally, the sentence is not unduly harsh or severe.

Accordingly, the judgment should be affirmed.

HURLBUTT, J.P., SCUDDER, PINE and HAYES, JJ., concur.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed.