■ In the Matter of CASEY N., an Infant. ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TERRY S. et al., Appellants. (Proceeding No. 1.) In the Matter of KERYN D., an Infant. ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TERRY S. et al., Appellants. (Proceeding No. 2.) In the Matter of TYLER S., an Infant. ORANGE COUNTY DEPARTMENT OF

SOCIAL SERVICES, Respondent; TERRY S. et al., Appellants. (Proceeding No. 3.) [873 NYS2d 343]—

In three related child neglect proceedings pursuant to Family Court Act article 10, the father appeals from (1) a fact-finding order of the Family Court, Orange County (Currier Woods, J.), dated July 9, 2007, and (2) an order of disposition of the same court dated September 5, 2007, which, after a hearing, inter alia, adjudicated that he neglected the children and placed his home under the supervision of the Orange County Department of Social Services for a period of one year, and the mother separately appeals from (1) a fact-finding order of the same court dated July 9, 2007, and (2) an order of disposition of the same court dated September 5, 2007, which, after a hearing, inter alia, adjudicated that she neglected the children and placed her home under the supervision of the Orange County Department of Social Services for a period of one year.

Ordered that the appeals from the fact-finding orders are dismissed, without costs or disbursements, as the fact-finding orders were superseded by the orders of disposition; and it is further,

Ordered that the appeals from so much of the orders of disposition dated September 5, 2007, as placed the homes of the father and the mother under the supervision of the Orange County Department of Social Services for a period of one year are dismissed as academic, without costs or disbursements, as those portions of the orders expired by their own terms; and it is further,

Ordered that the order of disposition dated September 5, 2007, relating to the father, is modified, on the law, by deleting the provisions thereof adjudicating that the father neglected the children Casey N. and Keryn D.; as so modified, the order of disposition dated September 5, 2007, relating to the father, is af-

firmed insofar as reviewed, without costs or disbursements, and the fact-finding order dated July 9, 2007, relating to the father is modified accordingly; and it is further,

Ordered that the order of disposition dated September 5, 2007, relating to the mother, is reversed insofar as reviewed, on the law, without costs or disbursements, the fact-finding order dated July 9, 2007, relating to the mother, is modified accordingly, and the matter is remitted to the Family Court, Orange County, for a new hearing and determination in accordance herewith.

The appeals from those portions of the orders of disposition dated September 5, 2007, which placed the homes of the father and the mother under the supervision of the Orange County Department of Social Services for a period of one year must be dismissed as academic because those portions of the orders expired by their own terms (*see Matter of Regina P.*, 19 AD3d 698, 699 [2005]). However, the adjudication of neglect constitutes a permanent and significant stigma which might indirectly affect the appellants' status in any future proceedings. Therefore, the appeals from so much of the orders of disposition dated September 5, 2007, as adjudicated that the father and the mother neglected the children are not academic (*see Matter of Regina P.*, 19 AD3d at 699).

A party in a proceeding pursuant to Family Court Act article 10 has both a constitutional right and a statutory right to be represented by counsel (*see* US Const 6th Amend; NY Const, art 1, § 6; Family Ct Act § 262 [a] [i]; *Matter of Jung [State Commn. on Jud. Conduct]*, 11 NY3d 365 [2008]; *Matter of Ella B.*, 30 NY2d 352, 356-357 [1972]). A party, however, may waive the right to counsel and opt for self-representation (*see People v Arroyo*, 98 NY2d 101, 103 [2002]; *People v Smith*, 92 NY2d 516, 520 [1998]; *Matter of Jetter v Jetter*, 43 AD3d 821, 822 [2007]). Before permitting a party to proceed pro se, the court must determine that the party's decision to do so is made knowingly, intelligently, and voluntarily (*see People v Smith*, 92 NY2d 516, 520 [1998]). To ascertain whether a party's waiver of the right to counsel meets these requirements, the court must conduct a "searching inquiry" of that party (*People v Arroyo*, 98 NY2d at 103; *see People v Slaughter*, 78 NY2d 485, 491 [1991]). While there is no "rigid formula" to the court's inquiry, there must be a showing that the party "was aware of the dangers and disadvantages of proceeding without counsel" (*People v Providence*, 2 NY3d 579, 582 [2004]; *see Matter of Evan F.*, 29 AD3d 905, 907 [2006]; *see also Faretta v California*, 422 US 806, 835 [1975]). For example, the court may inquire about the litigant's "age,

education, occupation, previous exposure to legal procedures and other relevant factors bearing on a competent, intelligent, voluntary waiver" (*People v Smith*, 92 NY2d at 520). "Denial of the right of self-representation is not subject to harmless error analysis" (*People v LaValle*, 3 NY3d 88, 106 [2004]; *see Matter of Evan F.*, 29 AD3d at 906).

Here, the Family Court failed to sufficiently advise the mother of the risks of self-representation. The entirety of the colloquy on this issue was as follows:

"THE COURT: Do you wish Mr. [Gary] Eisenberg to represent you, ma'am?

"[LISA S.]: I don't believe he's representing my interests, but I don't think I have a choice now do I?

"THE COURT: Well, you can represent yourself and he can advise you that's your choice.

"[LISA S.]: Yes, I would like to do that where he advises me, but I represent myself.

"THE COURT: She's entitled to do what she wishes to do.

"MS. [LINDA] DASILVA [Orange County District Attorney, counsel for the petitioner]: Oh, I agree Judge.

"THE COURT: I don't want her to have an attorney if she doesn't want it.

"MS. DASILVA: Right.

"THE COURT: And I don't want it on the record that she doesn't want Mr. Eisenberg representing her and then me [*sic*] proceed with Mr. Eisenberg.

"[LISA S.]: That's what I wanted from the inception, your Honor.

"THE COURT: So if she wishes to represent herself, she can represent herself though I would caution you against it and Mr. Eisenberg would be appointed to stay on the case as your advisor, ma'am.

"[LISA S.]: Okay.

"THE COURT: So either he's going to do the questioning or you're going to do the questioning, but you have to follow the same legal rules that everyone else has to follow, what's your choice?

"[LISA S.]: I would like to do the questioning and be advised.

"THE COURT: Do you want to discuss—

"[LISA S.]: Can I at least have a five—a couple minutes with him?

"THE COURT: Sure. I'll give you a couple minutes. Go ahead.

"[LISA S.]: All right.

"THE COURT: You can step down for a few minutes. (The witness left the stand.)

"[LISA S.]: Just for like two minutes.

"THE COURT: That's fine.

"[short recess]

"THE COURT: All right, Mr. Eisenberg, we're back on the record. What decision did [Lisa S.] make?

"MR. EISENBERG: Judge, [Lisa S.] is happy to have my assistance, but she feels she would like to ask her questions because this way she'll have her say in court. As you know, she has a lot of things she wants to say, and she understands—

"THE COURT: Right. She's not testifying now, she's asking questions.

"MR. EISENBERG:—understood. She understands there's a format to doing this and she's going to try to stick to that format, but she feels at least this way she herself is having her day in court if she asks the questions. So I'm going to try to assist her as best I can with that.

"THE COURT: All right. Go ahead, [Lisa S.]."

As the above illustrates, the only inquiry the Family Court conducted was to ask the mother twice whether she wanted Eisenberg to represent her. Otherwise, it made only one declaratory statement to the mother that generally cautioned her against self-representation, without detailing the dangers and disadvantages of doing so, and informed her that she would have to follow the same legal rules as the other parties. As such, the Family Court failed to conduct a sufficiently searching inquiry of the mother to be reasonably certain that she understood the dangers and disadvantages of giving up the fundamental right of counsel (*see People v Smith*, 92 NY2d at 521; *Matter of McGregor v Bacchus*, 54 AD3d 678 [2008]; *Matter of Guzzo v Guzzo*, 50 AD3d 687 [2008]). Also absent is any inquiry by the Family Court to evaluate the mother's competency to waive counsel and her understanding of the consequences of self-representation (*see People v Arroyo*, 98 NY2d at 104; *People v Smith*, 92 NY2d at 520; *Matter of Jetter v Jetter*, 43 AD3d at 822). Further, to the extent the colloquy could be read to indicate that the court delegated its duty to conduct a searching inquiry to the mother's counsel, there is no authority for the court to have done so (*cf. People v Delaron*, 184 AD2d 653, 654 [1992]). In any event, there is no evidence that counsel conducted a searching inquiry. Accordingly, because the court did not ensure that the mother's waiver of her right to counsel

was made knowingly, intelligently, and voluntarily, we reverse the September 5, 2008, order of disposition relating to the mother without regard to the merits (*see People v Arroyo*, 98 NY2d at 104; *People v Smith*, 92 NY2d at 520; *Matter of Guzzo v Guzzo*, 50 AD3d 687 [2008]; *Matter of Jetter v Jetter*, 43 AD3d at 822; *Matter of Hassig v Hassig*, 34 AD3d 1089 [2006]; *Matter of Evan F.*, 29 AD3d 905 [2006]; *Matter of Rachel P.*, 286 AD2d 868 [2001]). Moreover, we remit the matter to the Family Court, Orange County, for a new hearing and determination, upon a proper inquiry, into the mother's understanding of the consequences of self-representation (*see Matter of McGregor v Bacchus*, 54 AD3d 678 [2008]; *Matter of Guzzo v Guzzo*, 50 AD3d 687 [2008]).

The determination that the father neglected the child Tyler S. is supported by a preponderance of the evidence (*see* Family Ct Act § 1012 [f] [i] [B]; *Matter of Ifeiye O.*, 53 AD3d 501 [2008]). Despite his knowledge of the violence between Tyler S. and the mother, the father failed to protect Tyler S. when he left him alone with the mother unsupervised (*see Matter of Selena J.*, 35 AD3d 610 [2006]; *Matter of Erin QQ.*, 180 AD2d 944, 945 [1992]; *Matter of Carrie R.*, 156 AD2d 756 [1989]). However, the record does not support the determinations that the father neglected the children Casey N. and Keryn D. Mastro, J.P., Miller, Carni and McCarthy, JJ., concur.